GAUSE–WARE FUNERAL HOME v. Mc-
GINLEY.   (No. 12169.)

Court of Civil Appeals of Texas.   Fort Worth.
June 29, 1929.

Rehearing Denied Sept. 28, 1929.

P. Walter Brown and Chas. T. Rowland,
both of Fort Worth, for appellant.

McLean, Scott & Sayers, of Fort Worth, for
appellee.

DUNKLIN, J.  G. L. Gause and J. M. Ware
have appealed from a judgment rendered
against them in favor of J. M. McGinley for
the sum of $10,307.50, with interest thereon
at the rate of 6 per cent. per annum from the
date of the judgment, as damages for person-

al injuries alleged to have been sustained by the plaintiff as the result of a collision between a Ford automobile which he was driving and an ambulance or commercial vehicle owned by the defendants, who were doing business in the city of Fort Worth under the trade-name of Gause-Ware Funeral Home.

The undisputed facts show that the accident occurred at the intersection of Third street, running east and west, and Throckmorton street, running north and south, and, that immediately prior to the collision plaintiff approached the crossing from the east, going west on Third street, and the defendants' ambulance was coming from the north and going south on Throckmorton street. When plaintiff reached the intersection of the two streets, he turned south on Throckmorton street in the direction of the west side of that street, and his car was struck by the ambulance about the time he reached the west side of Throckmorton street. As a result of the collision, the plaintiff's car was badly damaged, and he sustained serious personal injuries, by reason of which damages were awarded to him. He did not sue for damages done to his car.

In answer to special issues, the jury found (1) that immediately prior to the collision the ambulance was traveling at a speed of 20 miles an hour, and that the driving of the ambulance at that speed was a proximate cause of the collision; (2) as the driver of the ambulance approached the place of collision, he failed to keep such a lookout for automobiles approaching the intersection of the two streets from the east as a person of ordinary prudence would have kept under similar circumstances, and that his negligence in such failure was a proximate cause of the collision; (3) that the driver of the ambulance was negligent in failing to give a warning of his approach to the intersection of the two streets, and that such negligence was a proximate cause of the collision; (4) that plaintiff was not guilty of negligence in driving his automobile into the west side of Throckmorton street just prior to or at the time of the collision; and that, as he approached the place of collision, he was keeping such a lookout for vehicles approaching from the north as a person of ordinary prudence would have kept under like circumstances.

The ambulance driver was named Scott Martin. The plaintiff introduced Martin as a witness in the development of his case before the defendants offered any evidence. In answer to questions by plaintiff's counsel, he testified that on the morning of the collision he started from the defendant's funeral home on the south side of town, intending to go to a repair shop and get some snubbers installed on the ambulance, and, after taking Mr. Gause to his place of business on Weatherford street, he turned from that street into Throckmorton street and proceeded to Third street, where the collision occurred; the ob-

ject of his trip being to procure the snubbers. He further testified that he did not sound the horn as he approached the street intersection because he was busy trying to stop the ambulance and was watching Mr. McGinley, who was approaching the intersection from the east, and another car approaching the same crossing from the west.

In order to show negligence on the part of Martin and before any testimony was offered by the defendant either from Martin or any other witness, plaintiff, McGinley, was permitted to testify, over defendants' objection, that, after he was carried to the hospital for treatment for his injuries, a man he was told was Scott Martin, the driver of the ambulance, came in to see him and said he was sorry the accident had happened, and further stated to plaintiff that he did not see plaintiff's car before the collision.

For the same purpose and under the same circumstances and during the development of plaintiff's case before he closed his evidence, plaintiff also introduced the testimony of Mrs. Bessie McGinley, plaintiff's mother, to the effect that she too saw Scott Martin, the driver of the ambulance, at the hospital after the accident happened, and was there told by Martin that he was very sorry that the accident had happened, and that he did not see the plaintiff until the collision occurred. Defendants' counsel objected to that testimony at the time it was admitted and also later moved to strike it out on the ground that it was hearsay, incompetent, and not admissible as impeaching testimony of Martin when no predicate had been laid therefor.

■■ There were no facts or circumstances proven which would make the alleged declarations of Martin, testified to by those two witnesses, admissible as a part of res gestæ, and, since they were calculated to influence the jury against the defendants, the assignments of error addressed to the admission of that testimony are sustained.

In this connection it will be proper to note that Mrs. McGinley's testimony tended to show that, at the time the alleged statements were made to her by Scott Martin, the defendant J. M. Ware was standing near and probably heard the statement made by Martin. It is insisted by counsel for appellee that, if the defendant Ware was present, that fact would remove the force of the objection made to Mrs. McGinley's testimony, referred to above. However, we do not believe that contention to be sound, since the evidence conclusively shows that the defendant J. M. Ware was not present at the time the accident happened; that he knew nothing of the circumstances surrounding it of his own knowledge, and therefore was not in a position to controvert or challenge the alleged statements made by Scott Martin to Mrs. McGinley.

■ Appellee insists further that the error, if any, in the admission of the testimony referred to above, was cured or waived by the

failure of the defendants to object to the testimony of Homer Belew that after the accident he met Scott Martin at or near the hospital to which plaintiff had been taken for medical treatment, and that Martin, in answer to his question as to how the accident happened, replied: "I declare I don't know. I was driving down the street and the first thing I knew I was right on him."

A proper predicate for the introduction of Belew's testimony as impeaching that of Martin had already been laid by questions propounded by plaintiff's counsel as to whether or not he had made that statement to Belew and Martin had denied making it. Under such circumstances, the defendants could not have made a valid objection to Belew's testimony, since it was clearly admissible for the purpose of impeaching the testimony of Martin brought out by plaintiff, to the effect that he did see the plaintiff before the accident occurred and his further testimony, given in answer to questions by the defendants' counsel when he was again put on the stand, as follows:

"I was beginning to come into the intersection of the street before I could see traffic on West Third Street. Before I got into West Third Street, I looked to see what was coming. I saw Mr. McGinley and another car coming from the west. Mr. McGinley's car was coming from the east, going west.

"I have seen this map. In regard to where I first saw Mr. McGinley, when I got along here (indicating on map) he was back here. Mr. McGinley's car was about 30 or 35 feet east of the corner. I was about 15 feet from the corner. There was not a thing on earth in my way for me to make the street. I meant to go on. Mr. McGinley was coming on, and this other fellow was coming from the west, and it looked like the man coming from the west was going to try to come on east and turn south on Throckmorton Street, and I began checking up, and Mr. McGinley was coming on in from the east, and this other fellow, instead of turning, he came back to my back, and Mr. McGinley run in and side-swiped me, hit the left front of the ambulance, and went on through ahead of me and into the curb. The ambulance was about the center of Third Street when he struck me. He struck the left front part of the ambulance."

Hence the authorities relied on by appellee to show a waiver of right to complain of the introduction of testimony, when other testimony of the same character and to the same effect is admitted without objection, have no proper application here.

■ There is no merit in another assignment to the admission of testimony of H. R. Elbert of the alleged statements by Scott Martin of like character of those referred to above, since a proper predicate had been laid for the introduction of that testimony by first inquiring of Martin whether or not he made the statements to Elbert, which he denied making.

■ Error has been assigned to the admission of testimony of J. M. North to an alleged conversation occurring between him and the defendant J. M. Ware, and in which conversation the witness testified that Ware told him that he had talked to Scott Martin, the driver of the ambulance, and that Martin had told him (Ware) that he did not see the plaintiff until he hit him. That testimony was admitted over defendants' objection that it was hearsay and incompetent and an attempt to impeach the witness Ware on an immaterial and collateral point.

That testimony was doubly hearsay, in that it was to the effect that Ware had said that Martin made the statement referred to, and manifestly its admission was erroneous. And for reasons already noted there is no merit in appellee's contention that the right of appellants to complain of admission of that testimony was waived by their failure to object to the testimony of witness Belew referred to above.

■ Article 796 of the Penal Code 1925 requires that every motor vehicle shall be equipped with a bell, gong, horn, or whistle to give warning of approach to other vehicles, and further that "every person operating a motor vehicle shall sound said bell, gong, horn, or whistle or other device whenever necessary as a warning of danger but not at other times or for other purposes." The court gave to the jury in charge the provision just quoted, with the exception of the latter part, reading, "but not at other times or for other purposes." Appellant excepted to the failure to include the whole of the provision in his charge. Upon another trial, we believe that the whole of the quoted provision should be given to the jury if any part of it is submitted, in view of the rule announced in such decisions as Dallas Hotel Co. v. Fox, 111 Tex. 461, 240 S. W. 517; Gammage v. Gamer Co. (Tex. Com. App.) 213 S. W. 930.

There were other objections urged at the time of the trial to the court's instructions as to the law of the road shown in the Revised Statutes of 1925 and to the form of the issues submitted, and also assignments to the findings of the jury as being without support in the evidence or against the preponderance of the evidence, all of which have been duly considered, and they are hereby overruled without further discussion.

■ The finding of negligence of the driver of the ambulance in failing to give warning signals of his approach to the intersection of the two streets in question could not have been the proximate cause of the accident, since plaintiff testified that, before he drove upon the intersection of the two streets preparatory to turning to the south on Throckmorton street, he saw the ambulance coming south on that street at a distance of a block

north of the intersection, and proceeded on his course under belief that he would have time to make the crossing before the ambulance reached it; hence that finding of negligence could not furnish a basis for the recovery awarded. And if plaintiff's testimony is the same upon another trial, that issue of negligence should not be submitted.

Appellants also present a further contention to the effect that the charge of the court as to the law of the road was incorrect in other particulars not pointed out in their objections to the charge at the time of trial; and those assignments are overruled by reason of such failure without a determination of their merit.

For the reasons noted above, the judgment of the trial court is reversed, and the cause is remanded.